UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MCHC-CHICAGO HOSPITAL COUNCIL, | ) | **IMMEDIATE INJUNCTIVE** |
| | ) | **RELIEF REQUESTED** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:16-cv-4012 |
| SANDLOT SOLUTIONS, INC., and SANTA | ) | |
| ROSA CONSULTING, INC., | ) | |
| | ) | **JURY DEMAND REQUESTED** |
| Defendants. | ) | |
| | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, MCHC-Chicago Hospital Council ("MCHC"), by its attorneys, and for its Complaint against Defendants Sandlot Solutions, Inc. ("Sandlot") and Santa Rosa Consulting, Inc. ("Santa Rosa") (collectively "Defendants"), states as follows:

### INTRODUCTION

1.      This case involves the immediate unauthorized destruction of MCHC's electronic protected health information ("PHI") by Defendants Sandlot and Santa Rosa in violation of the federal Health Insurance Portability and Accountability Act ("HIPAA").

2.      MCHC is an Illinois not-for-profit corporation which operates the MetroChicago Health Information Exchange ("MetroChicago HIE"). The MetroChicago HIE is a health care information sharing platform which allows participating hospitals and physicians to securely exchange accurate and up-to-date medical information to improve the speed and accuracy of patient health care. This exchange provides the ability for better decision-making by participating hospitals and physicians in the Chicagoland area about their patients' care and treatment, especially in acute and emergency situations.

3.     This action arises from the recent actions of Sandlot, MCHC's third-party information technology ("IT") support provider, and Santa Rosa, according to Sandlot's website, an owner of Sandlot, for the MetroChicago HIE.  Specifically, Sandlot recently breached its agreement with MCHC by shutting down the MetroChicago HIE system and denying MCHC's Participants' access to their Client Data on the system.  MCHC then learned that Sandlot was winding down and would cease operations by April 8, 2016, and that Sandlot was planning to provide MCHC a copy of its raw Client Data and then destroy the existing Client Data from its third-party hosting service's servers 24 hours after such delivery.  Santa Rosa has taken an active role in the negotiations regarding the destruction of MCHC's data through its General Counsel Richard Saslow and President and Chief Operating Officer Thomas Watford (who is also a Vice Chairman at Sandlot).  The proposed data transition plan by Sandlot and Santa Rosa is an anticipatory breach of Sandlot's data management and transition obligations under the Agreement and would result in a clear violation of HIPAA.

4.     MCHC has grave concerns that the data transition plan suggested by Sandlot and Santa Rosa will not allow MCHC to properly download and validate the copy of the Client Data produced by Sandlot in order to determine whether any of the Client Data is even usable and not corrupted before Sandlot destroys the existing Client Data.  If Sandlot proceeds with its destruction protocol and MCHC discovers that the raw Client Data copy is corrupt or unusable, MCHC would lose all of the existing Client Data which MCHC and its Participants collected over a more than two year period.  This would result in the loss of millions of individual records with PHI for more than two million patients in the MetroChicago HIE.

5.     By this action, MCHC seeks to enjoin Sandlot and Santa Rosa from destroying MCHC's Client Data, which includes electronic PHI, until such time as a proper transition of

such data can be complete. This would ensure compliance with HIPAA and the protection of millions of individual records with PHI.

## PARTIES

6.      MCHC is an Illinois not-for-profit corporation with its principal place of business at 222 South Riverside Plaza, Suite 1900, Chicago, Illinois 60606.

7.      Defendant Sandlot Solutions, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 222 W. Las Colinas Blvd., Irving, Texas 75039.

8.      Santa Rosa Consulting, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 41000 Woodward Ave., Bloomfield Hills, MI 48304.

9.      There is thus complete diversity between the Plaintiff (a citizen of Illinois) and Defendants (citizens of Delaware, Texas and Michigan).

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants.

11.      MCHC is a citizen of Illinois.

12.      Sandlot is a citizen of Delaware and Texas.

13.      Santa Rosa is a citizen of Delaware and Michigan.

14.      The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. The Client Data is necessary for the MetroChicago HIE to continue operating and the destruction or loss of the Client Data would far exceed the jurisdictional amount in controversy.

15.     This Court has personal jurisdiction over Sandlot because it has consented to jurisdiction in the State of Illinois and designated the state and federal courts of Cook County, Illinois as proper venue, by virtue of Paragraph 18.8. of the Sandlot Solutions Subscription Services Agreement.  Additionally, this Court has personal jurisdiction over Sandlot and Santa Rosa because they do business in the State of Illinois, and the data in question was collected by and transmitted from Illinois hospitals.

16.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)-(b).

## FACTUAL BACKGROUND

### A.     MCHC Background

17.     MCHC is an Illinois not-for-profit corporation that is tax exempt under Section 501(c)(3) of the Internal Revenue Code.

18.     MCHC has two primary functions: maintaining (1) the Illinois Poison Center, and (2) the MetroChicago HIE program.

### B.     MetroChicago HIE

19.     The MetroChicago HIE was formed by MCHC in 2009 to assist its participating health care providers ("Participants") in electronically sharing health care information across organizations within a region or community when giving care to an individual.

20.     The MetroChicago HIE provides the ability to participating health care providers to securely exchange medical information to ensure that patients receive safe, quality health care faster.  By having accurate and up-to-date information readily available, Participants can make better decisions about their patients' care and treatment, especially in acute and emergency situations.

4

21.     In general, HIEs helps facilitate coordinated patient care, reduce duplicative treatments and avoid costly mistakes.  The demand for HIEs is growing among health providers because the need for HIEs is clear and its benefits are significant.

22.     Generally, HIE benefits include:

  a. Providing a vehicle for improving quality and safety of patient care by reducing medication and medical errors;

  b. Stimulating consumer education and patients' involvement in their own health care;

  c. Increasing efficiency by eliminating unnecessary paperwork;

  d. Providing caregivers with clinical decision support tools for more effective care and treatment;

  e. Eliminating redundant or unnecessary testing;

  f. Improving public health reporting and monitoring;

  g. Creating a potential loop for feedback between health-related research and actual practice;

  h. Facilitating efficient deployment of emerging technology and health care services;

  i. Providing the backbone of technical infrastructure for leverage by national and State-level initiatives;

  j. Providing a basic level of interoperability among electronic health records ("EHRs") maintained by individual physicians and organizations; and

  k. Reducing health related costs.

23.     Ultimately, HIEs generally allow for the secure sharing of health information to enhance coordination of care, improve outcomes, and decrease the cost of health care.

24.     The MetroChicago HIE involves a database in which each of MCHC's Participants insert patient data into a digital interface during each transaction (e.g., patient visits,

lab results, etc.) ("Client Data"). MCHC's Participants can access the Client Data through a digital portal. The Client Data consists of PHI that is subject to HIPAA's strict security and privacy provisions.

25. The Client Data is accessible by all MCHC Participants through the MetroChicago HIE, providing they have an established a valid HIPAA treatment, payment, or health care operations relationship with a specific patient. For example, if "Patient Smith" visits Participant Hospital A for his primary care but gets into an accident and is taken to the emergency room of Participant Hospital B, then Participant Hospital B can use the MetroChicago HIE to access Patient Smith's patient history that Participant Hospital A has added into the MetroChicago HIE. However, Hospital C, who has never treated Patient Smith, would not have access to Patient Smith's information.

**C. MCHC's Agreement with Sandlot**

26. In February 2013, MCHC issued a request for proposal for a new IT technology and support provider for the MetroChicago HIE. Ultimately, Sandlot was selected and a term sheet was finalized by Sandlot and MCHC in May 2013.

27. Between May 2013 and November 2013, Sandlot and MCHC negotiated the exact terms of the various deliverables Sandlot would provide to MCHC as well as the protocol for the data processing and managing system, including functionality, support and other factors.

28. These negotiations culminated in the execution of the Sandlot Solutions Subscription Services Agreement ("SSA") and the Subcontractor Business Associate Addendum ("BAA") (collectively the "Agreements") between Sandlot and MCHC. (True and accurate copies of SSA and BAA[1] are attached hereto as **Exhibit A**).

---

[1] The BAA is attached to the SSA as Exhibit H.

29.     Santa Rosa was originally a party to the Agreements but was removed by way of an amendment on June 18, 2015. Nevertheless, Santa Rosa's officers and general counsel, along with Sandlot's Board of Directors, have control over the preservation of the Client Data.

30.     Under the Agreements, Sandlot was required to provide a variety of services regarding the Client Data that MCHC's Participants sent to the MetroChicago HIE, including but not limited to: (1) acquiring and developing the necessary software applications and licenses to run the MetroChicago HIE, and (2) entering into subcontracts with information technology hosting vendors and leasing companies.

31.     In accordance with the Agreements, Sandlot entered into a subcontract with Savvis (who was then acquired by CenturyLink) to provide secure hosting services for the Client Data and a lease agreement with Farnham to lease the hardware to run the hosting services.

**D.     Sandlot's Obligations Regarding Service, Data Management (including PHI) and HIPAA Compliance**

32.     Under the Agreements, Sandlot has certain contractual obligations to maintain the integrity of all Client Data and implement safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of that data.

33.     Specifically, Sandlot agreed that:

    a.     the HIE Solution will function and perform substantially in accordance with the Description set forth [in the SSA];

    b.     Sandlot will perform all services and provide the HIE Solution in a timely, professional and workmanlike manner including, without limitation, delivery, testing and implementation of the New Developments [as set forth in the SSA];

    c.     the HIE Solution (including interfaces and data feeds, if provided by Sandlot) will function in an integrated manner; and

d. the HIE Solution will maintain the integrity of all data submitted by Participants and will not change, delete or add any data to what is submitted by Participants.

*See* SSA, § 7.1.

34. Additionally, Sandlot agreed that it would "[i]mplement safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the Electronic Protected Health Information that it creates, receives, maintains, or transmits on behalf of MCHC or the Covered Entities." *See* BAA, § 1.3.

35. These contractual obligations are in addition to Sandlot's statutory obligations under HIPAA as a Subcontractor Business Associate of MCHC who handles electronic PHI.

**E.   Sandlot's Breach of the Agreements and Threat to Destroy Client Data**

36. In February 2016, MCHC learned that Sandlot was going through a potential acquisition process in which Sandlot's assets would be purchased by a third-party and the SSA would be assigned to the third-party who would assume Sandlot's obligations under the Agreements.

37. On or about, March 28, 2016, MCHC learned that this possible acquisition of Sandlot had fallen through. At that time, Sandlot, through its lawyer Mr. Richard Saslow, informed MCHC that Sandlot would be winding down and would cease operations on April 8, 2016.

38. However, on or about March 29, 2016, Sandlot permanently shut down the MetroChicago HIE system, despite Sandlot's representations to the contrary. Certain MCHC employees and an independent contractor were on the system and learned immediately that the system had been shut down.

39.     MCHC immediately reached out to its Participants and issued a notice to inform the Participants of the situation regarding Sandlot.

40.     On March 30, 2016, John Bartley, an independent contractor hired by MCHC, spoke with Michael Edmondson at Sandlot, who informed Mr. Bartley that Sandlot was planning to send MCHC a copy of its raw Client Data and then destroy the existing Client Data from its servers at CenturyLink 24 hours after such delivery.  This plan for the destruction of the Client Data was confirmed in Mr. Edmondson's email to Mr. Bartley dated April 1, 2016. (A true and accurate copy of the email is attached as **Exhibit B**).

41.     Mr. Bartley, on behalf of MCHC, informed Sandlot that this proposed data transition was unacceptable.  Particularly, Mr. Bartley explained that MCHC would be unable to properly download and validate the copy of the Client Data produced by Sandlot in order to determine whether any of the Client Data was even usable and had not been corrupted or altered.

42.     The raw Client Data copy proposed by Sandlot could be corrupted and MCHC has no reasonable assurances that it will be able to restore full or even partial functionality of the HIE system within 24 hours of receipt.  Indeed, it is anticipated that it could take as many as 10 days to determine if the Client Data has been properly transferred, and even longer – an estimated three months – to determine if the MetroChicago HIE system will be functional.

43.     Moreover, to use the copy Sandlot must transfer multiple software applications into the Escrow Account, as required by the SSA, so MCHC can use such software to begin the process of validating, installing and using the Client Data.  Upon information and belief, Sandlot has not placed all of the required software and documentation in the Escrow Account as required by the SSA.

44.     Meanwhile, Sandlot maintains the data in a readable virtual machine ware ("VMware") format, which is a virtual copy of the entire software database, including both the Client Data and the necessary application software and operating software to run the system and validate the Client Data. MCHC has requested that Sandlot provide the data in the VMware format which would allow MCHC to validate the Client Data to ensure its integrity and restore operations in an expedited manner.

45.     Despite MCHC's repeated requests, Sandlot has continually refused to provide MCHC with the Client Data in the VMware format, citing HIPAA concerns. Specifically, Sandlot claims that the VMware format could potentially contain previously deleted PHI from other Sandlot clients. MCHC has informed Sandlot that its concern is not valid as it would take a forensic data recovery professional to access such deleted data, if it even exists in the first place.

46.     On March 31, 2016, outside counsel for MCHC sent a demand letter to counsel for Sandlot and Santa Rosa to provide notice of breach as to Sandlot's shut down of the system and requested Sandlot to cure the breach. The letter also raised the issue regarding the potential destruction of the Client Data and requested a standstill agreement between Sandlot, Santa Rosa and MCHC under which Sandlot would preserve all Client Data and related software while the parties negotiated a proper transfer of all Client Data as well as written assurance that Sandlot would preserve all Client Data.

47.     Sandlot and Santa Rosa have refused MCHC's reasonable request for a standstill and preservation of the Client Data and indicated that they were planning to proceed with the raw data copy transfer and destruction protocol outlined by Mr. Edmondson.

48.     Despite Sandlot's representations, as of the filing of this Verified Complaint, Sandlot has not provided MCHC with _any_ copy of the Client Data.  To date, Sandlot has not provided even the raw Client Data copy it promised a week ago.

**F.     Sandlot and Santa Rosa's Destruction Plan would Violate HIPAA**

49.     The Client Data at issue contains PHI and other confidential health records which are protected by federal law pursuant to HIPAA and its implementing regulations. *See* 45 CFR § 164.306.

50.     Sandlot, as MCHC's subcontractor, is a "business associate" as defined by HIPAA.  45 CFR § 160.103(1)(ii).

51.     Sandlot and Santa Rosa's refusal to provide Client Data in a reliable format, and its intention to destroy the Client Data, would violate HIPAA's mandate that business associates ensure the confidentiality, integrity, and availability of all electronic PHI. 45 CFR § 164.306(a)(1).

52.     In addition, as a business associate, Sandlot must implement audit controls which "record and examine activity in information systems that contain or use electronic [PHI]." 45 CFR 164.312(b).

53.     Audit Trail and Node Authentication Logs ("ATNA Logs") are utilized by covered entities and business associates to provide such audit controls.  For example, each time a user of the system accesses a patient record, a record is made in the ATNA Log.  Thus, in the event of an alleged or actual data breach, MetroChicago HIE and its Participants could tell if there was an unauthorized access of a given record by reviewing the ATNA Logs.

54.     Despite MCHC's repeated requests, Sandlot and Santa Rosa have not provided the ANTA Logs for the Client Data to MCHC.  A failure to provide MCHC with an adequate

copy of the ATNA Logs before they are destroyed by Sandlot and Santa Rosa would make difficult to comply with HIPAA's audit control requirements.

**G.    Irreparable Harm to MCHC if Sandlot and Santa Rosa Destroy the Client Data**

55.    In the event that Sandlot and Santa Rosa follow through with their threat to destroy the Client Data containing the PHI at issue, and MCHC is not able to reproduce the Client Data based on the raw Client Data copy provided by Sandlot, if it is provided at all, MCHC and its business operations will suffer irreparable harm, including the almost certain shut down of the MetroChicago HIE.

56.    First, the current MetroChicago HIE has millions of different transactions (e.g., hospital visits, lab results, etc.) involving more than two million different patients which have been transmitted to the MetroChicago HIE by MCHC's Participants.   If the Client Data is destroyed, then more than two years of time, effort and money of MCHC and its Participants spent to set up the system and input these transactions would be lost.  MCHC would have to start from scratch in terms of compiling Participant's patient data in order to rebuild the entire MetroChicago HIE.  Such an effort is unlikely to take place in light of the significant time, labor, money and resources necessary to do so.

57.    Second, MCHC has also spent almost seven years (beginning as early as 2009, prior to MCHC's official relationship with Sandlot in November 2013) building its credibility and reputation in the marketplace and among its Participants regarding the accomplishments and ability of the MetroChicago HIE.   Losing the Client Data, which is the heart of the MetroChicago HIE, would destroy the confidence the marketplace and Participants have in the MetroChicago HIE and completely ruin MCHC's hard-earned reputation.

58.     Third, MetroChicago HIE is utilized, or intended to be utilized, by some of MCHC's Participants to assist them in qualifying for various Federal programs. The inability for MCHC to run the MetroChicago HIE due to the destruction of the Client Data would result in the Participants being unable to qualify for certain Federal program incentives.

59.     Finally and most significantly, a destruction of the Client Data may ultimately cease MetroChicago HIE's operations completely and could potentially force MCHC to terminate the agreements it entered into with each of its Participants regarding the use and accessibility of the MetroChicago HIE system.

## LEGAL COUNTS

### COUNT I – BREACH OF CONTRACT - Sandlot

60.     MCHC incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 59 as if fully stated here.

61.     The Agreements are valid, enforceable contracts.

62.     MCHC has fully performed its obligations under the Agreements.

63.     Under the Agreements, Sandlot was required to provide a variety of services regarding the Client Data that MCHC's Participants entered into the MetroChicago HIE system, including but not limited to: (1) acquiring and developing the necessary software applications and licenses to run the MetroChicago HIE system, and (2) entering into subcontracts with information technology hosting vendors and leasing companies.

64.     Additionally, Sandlot agreed that it would (1) make the MetroChicago HIE database available; (2) allow MCHC and its Participants to access and use the MetroChicago HIE database; and (3) ensure that the MetroChicago HIE database would function and perform substantially in accordance with the specifications in the SSA. *See* SSA §§ 3.1, 3.2 and 7.1.

65.     Accordingly, Sandlot materially breached the Agreements when it shut down the HIE Solution system preventing MCHC and its Participants from accessing and using the Client Data.

66.     On March 31, 2016, MCHC made a formal demand on Sandlot to cure its breach, and Sandlot has refused.

67.     MCHC has been and will be damaged by this material breach because its Participants can no longer access the Client Data that allows them to make better decisions about their patient's care and treatment and ensure that patients receive safe, quality health care.

WHEREFORE, Plaintiff MCHC respectfully requests this Court enter a judgment in favor of MCHC and against Sandlot, award MCHC its damages, pre- and post-judgment interest and costs, and grant MCHC such further relief this Court deems just and proper.

## COUNT II – ANTICIPATORY BREACH OF CONTRACT -Sandlot

68.     MCHC incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 67 as if fully stated here.

69.     The Agreements are valid, enforceable contracts.

70.     MCHC has fully performed its obligations under the Agreements.

71.     The SSA contains certain representations and warranties regarding Sandlot's obligations to MCHC regarding patient data including that "the HIE Solution will maintain the integrity of all data submitted by Participants and will not change, delete or add any data to what is submitted by Participant." *See* SSA § 7.1(e).

72.     Additionally, the BAA requires Sandlot to "[i]mplement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity,

14

and availability of the Electronic Protected Health Information that it creates, receives, maintains or transmits on behalf of MCHC or the Covered Entities." *See* BAA § 1.3(b).

73.     On or about March 28, 2016, Sandlot informed MCHC that it was winding down and will cease operations by April 8, 2016.

74.     Sandlot has also informed MCHC that it is planning to provide MCHC with a copy of its raw Client Data and then destroy the existing Client Data 24 hours after such delivery.  To date, Sandlot has not provided even the raw Client Data copy.

75.     Despite MCHC's request for written assurance that Sandlot would perform its obligations under the Agreements regarding preservation of Client Data, Sandlot has positively and unequivocally manifested its intent to not render performance under the Agreements. Specifically, Sandlot confirmed its plans for the destruction of the Client Data in an email to MCHC's independent contractor.

76.     MCHC has grave concerns that Sandlot and Santa Rosa's data transition plan will not allow MCHC to properly download and validate the copy of the Client Data produced by Sandlot in order to determine whether any of the Client Data is even usable and not corrupted before Sandlot destroys the existing Client Data.   If Sandlot proceeds with its destruction protocol and MCHC discovers that the raw Client Data copy is indeed corrupt or unusable, MCHC would lose all of the existing Client Data which MCHC and its Participants collected over a more than two year period.

77.     Sandlot's stated plan to destroy the Client Data is an anticipatory breach of its contractual obligations under the Agreements to maintain the integrity of all Client Data and implement safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of that data.

15

78.     These contractual obligations are in addition to SSI's statutory obligations under HIPAA as a Subcontractor Business Associate of MCHC who handles electronic protected health information.

79.     If Sandlot materially breaches the Agreements by destroying the Client Data, MCHC will suffer damages as follows:

    a.     The loss of records involving millions of different patient transactions involving more than two million different patients transmitted by MCHC's Participants;

    b.     The loss of more than two years of time, effort and money which MCHC and its Participants spent to set up the database and input the Client Data;

    c.     Substantial harm to MCHC's hard-earned reputation in the marketplace and among its Participants built over a period of almost seven years;

    d.     The potential ineligibility of Participants to qualify for Federal programs;

    e.     The possibility of MCHC being forced to terminate its agreements with each of its Participants regarding the use and accessibility of the HIE system; and

    f.     Substantially impair the ability of MCHC and its Participants to demonstrate that they have satisfied the requirements of HIPAA.

80.     Ultimately, the destruction of the Client Data may cease MetroChicago HIE's operations completely.

WHEREFORE, Plaintiff MCHC respectfully requests this Court enter a judgment in favor of MCHC and against Sandlot, enjoin Sandlot from destroying the Client Data, award MCHC its damages, pre- and post-judgment interest and costs, and grant MCHC such further relief this Court deems just and proper.

## COUNT III – REPLEVIN - Sandlot and Santa Rosa
### (pursuant to 735 ILCS 5/19-101)

81.     MCHC incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 80 as if fully stated here.

82.     MCHC is entitled to lawful possession of the Client Data.  Sandlot and Santa Rosa have wrongfully detained the Client Data.

83.     The Client Data is being wrongfully detained by Sandlot and Santa Rosa by its refusal to provide MCHC with a readable, reliable format of same.

84.     The Client Data has not been taken for any tax, assessment, or fine or seized under any execution or attachment.

85.     MCHC has made a demand of Sandlot and Santa Rosa to provide the Client Data to MCHC.

86.     Sandlot and Santa Rosa has refused and continues to refuse to provide MCHC with the Client Data as requested.

WHEREFORE, Plaintiff MCHC respectfully requests this Court enter a judgment in favor of MCHC and against Defendants, requiring Defendants to return the Client Data to MCHC in the proper format, award MCHC its damages, pre- and post-judgment interest and costs, and grant MCHC such further relief this Court deems just and proper.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT – Santa Rosa

87.     MCHC incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 86 as if fully stated here.

88.     MCHC and Sandlot are parties to the Agreements, which are valid, enforceable contracts.

89.     Santa Rosa has knowledge of the existence of the Agreements and the parties thereto.

90.     Santa Rosa knowingly and without just cause is controlling Sandlot's destruction of the Client Data, thereby inducing Sandlot to breach the Agreements.

91.     MCHC will be damaged by such destruction of Client Data.

92.     If Sandlot material breaches the Agreements by destroying the Client Data, MCHC will be damaged as follows:

    a. The loss of records involving millions of different patient transactions involving more than two million different patients transmitted by MCHC's Participants;

    b. The loss of more than two years of time, effort and money which MCHC and its Participants spent to set up the database and input the Client Data;

    c. Substantial harm to MCHC's hard-earned reputation in the marketplace and among its Participants built over a period of almost seven years;

    d. The potential ineligibility of Participants to qualify for Federal programs;

    e. The possibility of MCHC being forced to terminate its agreements with each of its Participants regarding the use and accessibility of the HIE system; and

    f. Substantially impair the ability of MCHC and its Participants to demonstrate that they have satisfied the requirements of HIPAA.

93.     Ultimately, the destruction of the Client Data may cease MetroChicago HIE's operations completely.

WHEREFORE, Plaintiff MCHC respectfully requests this Court enter a judgment in favor of MCHC and against Santa Rosa, enjoin Santa Rosa from destroying the Client Data, award MCHC its damages, pre- and post-judgment interest and costs, and grant MCHC such further relief this Court deems just and proper.

### COUNT V – TEMPORARY RESTRAINING ORDER - Sandlot and Santa Rosa

94.     MCHC incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 93 as if fully stated here.

95.     As set forth above, Sandlot and Santa Rosa have willfully breached the Agreements by shutting down the MetroChicago HIE and have positively and unequivocally manifested their intent to not render performance under the Agreements regarding preservation and transfer of the Client Data. Indeed, Sandlot and Santa Rosa have confirmed their plan to provide MCHC with copy of the raw Client Data and then destroy the existing Client Data 24 hours after such delivery.

96.     There is ample reason to believe that Sandlot will carry out its plan to destroy the Client Data in blatant disregard and breach of the Agreements unless they are enjoined from such conduct.

97.     MCHC has a substantial likelihood of succeeding on the merits of this case.

98.     The harm to MCHC (i.e., the loss of Client Data forever) substantially outweighs any harm to Sandlot and Santa Rosa (i.e., paying the cost of hosting the Client Data for short period of time) if injunctive relief is not issued.

99.     As a result of Sandlot and Santa Rosa's malicious conduct, MCHC has suffered and will continue to suffer immediate and irreparable harm for which there is no adequate remedy at law.

100.    Sandlot and Santa Rosa, on the other hand, will suffer no harm by simply being ordered to preserve the Client Data for a short period of time.

101.     The public interest will be served by enjoining and restraining Sandlot and Santa Rosa's unlawful and improper conduct as it will prevent the destruction of PHI for more than two million patients.

WHEREFORE, Plaintiff MCHC respectfully requests this Court enter a judgment in favor of MCHC and against Sandlot and Santa Rosa, enjoin Sandlot and Santa Rosa from destroying the Client Data, and grant MCHC such further relief this Court deems just and proper.

### COUNT VI – PRELIMINARY INJUNCTION - Sandlot and Santa Rosa

102.     Plaintiff incorporates by reference and re-alleges the allegations contained in Paragraphs 1 through 101 as if fully stated here.

103.     As set forth above, Sandlot and Santa Rosa have willfully breached the Agreements by shutting down the HIE Solution system and have positively and unequivocally manifested their intent to not render performance under the Agreements regarding preservation and transfer of the Client Data.  Indeed, Sandlot and Santa Rosa have confirmed their plan to provide MCHC with copy of the raw Client Data and then destroy the existing Client Data 24 hours after such delivery.

104.     There is ample reason to believe that Sandlot will carry out its plan to destroy the Client Data in blatant disregard and breach of the Agreements unless they are enjoined from such conduct.

105.     MCHC has a substantial likelihood of succeeding on the merits of this case.

106.     The harm to MCHC (i.e., the loss of Client Data forever) substantially outweighs any harm to Sandlot and Santa Rosa (i.e., paying the cost of hosting the Client Data for short period of time) if injunctive relief is not issued.

107.     As a result of Sandlot and Santa Rosa's malicious conduct, MCHC has suffered and will continue to suffer immediate and irreparable harm for which there is no adequate remedy at law.

108.     Sandlot and Santa Rosa, on the other hand, will suffer no harm by simply being ordered to preserve the Client Data for a short period of time.

109.     The public interest will be served by enjoining and restraining Sandlot and Santa Rosa's unlawful and improper conduct as it will prevent the destruction of PHI for more than two million patients.

WHEREFORE, Plaintiff MCHC respectfully requests this Court enter a judgment in favor of MCHC and against Defendants, enjoin Defendants from destroying the Client Data, and grant MCHC such further relief this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MCHC-Chicago Hospital Council, respectfully requests that this Court enter judgment in its favor and against Defendants Sandlot Solutions, Inc. and Santa Rosa Consulting, Inc., and provide the following relief:

A.     A temporary restraining order requiring Sandlot and Santa Rosa to:

1.     cease any destruction of the Client Data;

2.     preserve the Client Data for a period of time to allow MCHC to properly validate the Client Data and reasonably determine that MCHC can operate the system;

3.     provide MCHC with the proposed raw Client Data copy and VMware copy of the Client Data and all evidence of the audit controls required under 45 CFR 164.312(b), including without limitation, the ATNA Logs;

4.      transfer into the Escrow Account all software, source code and documentation required under the SSA so that MCHC can validate the Client Data and make the MetroChicago HIE functional; and

5.      reasonably cooperate with the MCHC throughout the Client Data transfer process.

B.      A preliminary injunction requiring Sandlot and Santa Rosa to:

1.      cease any destruction of the Client Data;

2.      preserve the Client Data for a period of time to allow MCHC to properly validate the Client Data and reasonably determine that MCHC can operate the system;

3.      provide MCHC with the proposed raw Client Data copy and VMware copy of the Client Data and all evidence of the audit controls required under 45 CFR 164.312(b), including without limitation, the ATNA Logs;

4.      transfer into the Escrow Account all software, source code and documentation required under the SSA so that MCHC can validate the Client Data and make the MetroChicago HIE functional; and

5.      reasonably cooperate with the MCHC throughout the Client Data transfer process.

C.      An award granting MCHC its damages, pre- and post-judgment interest and costs, and

D.      Awarding MCHC such additional and further relief that the Court deems appropriate and just.

## REQUEST FOR JURY DEMAND

Plaintiff MCHC-Chicago Hospital Council respectfully requests a jury trial on issues so triable.


Dated: April 5, 2016                  Respectfully submitted,

_s/ Brian Lewis_

Brian Lewis
Ryan McLaughlin
**BARNES & THORNBURG LLP**
1 N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312-357-1313
Fax: 312-759-5646
blewis@btlaw.com
rmclaughlin@btlaw.com

## **VERIFICATION**

Under penalties as provided by law, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
Charles Cox

SUBSCRIBED AND SWORN to before
me this 5th day of April, 2016.

_____
Notary Public

```
OFFICIAL SEAL
BARBARA J BROZYNA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/07/19
```

DMS 3869436v3

24